UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 5:10-CV-00154-KSF

GAY E. DARSIE                                                                                            PLAINTIFF

V.                                          **OPINION & ORDER**

C. TIMOTHY CONE, ESQ.,
EXECUTOR OF THE ESTATE
OF JAMES F. GLENN, DECEASED;
CAMBRIDGE F. GLENN II; NANCY CARRICK
GLENN; SARA BROOKE GLENN;
JAMES M. W. GLENN                                                                 DEFENDANTS

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

This matter is before the Court on the issues of the Plaintiff's motion to remand for lack of federal question jurisdiction, lack of diversity jurisdiction, and the applicability of the probate exception; and the Defendants' motion for leave to file a sur-reply. Having been fully briefed, these matters are ripe for review.

**I.    BACKGROUND**

The Plaintiff in this case is the surviving spouse of Dr. James F. Glenn. Dr. Glenn died in Lexington, Kentucky, on June 10, 2009, and his will and a codicil were admitted to probate in the Woodford District Court, Woodford County, Kentucky, on July 1, 2009. [Complaint ¶¶ 1,10]. The Plaintiff and Dr. Glenn executed a prenuptial agreement on January 9, 2002, and were married on January 11, 2002. [*Id.* at ¶¶ 7, 8]. The prenuptial agreement provided for Plaintiff "[i]ncome from Jim's TIAA-CREF account for and during Gay's lifetime in such amounts as Jim shall have diverted." [*Id.* at ¶ 8]. On May 21, 2006, Plaintiff and Dr. Glenn executed a postnuptial agreement containing gifts to Plaintiff of income for life from a lifetime annuity in a TIAA account, and income

(minimum distribution) from a CREF account for life. *Id.* at ¶ 9]. On or about this same date Dr. Glen executed his will, and executed a codicil on June 27, 2007. [*Id.* at ¶ 10]. The Will gave Plaintiff "Income from a lifetime annuity with TIAA and Income (minimum distribution) from my account with CREF." [*Id.* at ¶ 10].

On or about October 30, 2009 a representative of TIAA-CREF formally advised Plaintiff that she had waived her rights as a surviving spouse by signing a document on March 15, 2004 [sic] that allowed Dr. Glen to begin receiving distributions from one or more of the investment contracts. [*Id.* at ¶ 15]. The executor of Dr. Glenn's estate concluded that if TIAA-CREF continued with that position, Dr. Glenn's children, Defendants C.F. Glenn II, N.C. Glenn, S.B. Glenn, and J.M.W. Glenn ("Glenn Defendants") would be the beneficiaries of the accounts, but that Plaintiff would have a claim against the Estate, based on the Postnuptial Agreement and other expressions of Dr. Glenn's wishes, for the value of the minimum distributions payable to her over her lifetime. [*Id.* at ¶ 14]. At the time Plaintiff's Complaint was filed, the benefits had not been distributed.

Plaintiff also filed a Proof of Claim against the Estate based upon the Postnuptial Agreement and the Will. [*Id.*, Ex. D]. Because no agreement could be reached between Plaintiff and the Glenn Defendants, the executor denied the claim. [*Id.* at ¶ 17, Ex. G].

Plaintiff, while asserting in the Complaint that the conclusion of TIAA-CREF is erroneous, stated that she is not making any claim against TIAA-CREF or assets held by it. [*Id.* at ¶ 16]. Instead, she avers that the late Dr. Glenn breached the prenuptial and postnuptial contracts, and she seeks a number of different remedies for the alleged breaches. She seeks the value of the minimum distribution from one of the two contested accounts and the value of the income from the other as damages for breach of the prenuptial and postnuptial agreements from the estate; that her claim thereto be allowed by the executor, Defendant C.T. Cone; that the Glenn Defendants withdraw their

2

protest to that claim; and, in the alternative, that the Plaintiff be allowed to rescind the prenuptial and postnuptial agreements and thereby claim estate assets through intestate succession and/or renunciation, dower, and spousal exemption. Plaintiff is not seeking any monetary damages, injunction, or declaratory judgment against TIAA-CREF and has not named them as a party. While not seeking damages from the Glenn Defendants, Plaintiff does make claims of unjust enrichment, and asks that the Glenn Defendants be considered to have received an advancement on the estate when the TIAA-CREF funds are distributed.

The Glenn Defendants removed this action from the Woodford Circuit Court on May 4, 2010, asserting federal question jurisdiction under ERISA preemption and, in the alternative, diversity jurisdiction. [DE 1]. The Glenn Defendants contend that Plaintiff's breach-of-contract claims are in reality claims to recover benefits under ERISA as the rightful beneficiary and that the state-law grounds are completely preempted. Alternatively, the Glenn Defendants contend that, although Defendant Cone is non-diverse, his presence in the action does not defeat diversity jurisdiction because he was not properly joined and served at the time of removal.

Plaintiff's motion to remand and reply argue that her claims do not affect an ERISA-governed plan nor do they seek damages (i.e. payment of plan funds) from the beneficiaries, and that she seeks damages from the estate only (the estate will not receive any funds from the TIAA-CREF accounts). [DE 9, 12]. There is no argument from any party that the plans themselves are not subject to ERISA. Plaintiff also contends that Defendant Cone was properly joined under Kentucky law before removal, due to Defendant Cone stipulating that he had waived service, and entering an appearance in Woodford Circuit Court. The Plaintiff also avers that the Probate Exception to federal jurisdiction applies even in the presence of diversity jurisdiction.

Defendant moved to file a Sur-Reply. Plaintiff did not object. The sur-reply merely cites additional authorities in support of Defendant's argument that Mr. Cone was not properly served at the time of removal and, therefore, removal was proper. [DE 14-1].

## II. ANALYSIS

"The party seeking removal bears the burden of demonstrating that the district court has original jurisdiction." *Eastman v. Marine Mechanical Corp.*, 438 F.3d 544, 549 (6th Cir. 2006). *See also, Long v. Bando Manufacturing of America, Inc.*, 201 F.3d 754, 757 (6th Cir. 2000). "[B]ecause they implicate federalism concerns, removal statutes are to be narrowly construed" with all doubts resolved against federal jurisdiction. *Long*, 201 F.3d at 757.

### A. Federal Question Jurisdiction

Federal question jurisdiction generally exists whenever a federal question appears on the face of a well-pleaded complaint. *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987); *Agnifili v. KFC Corp.*, 924 F. Supp. 78, 79 (W.D. Ky. 1996). A Plaintiff, as the master of his or her complaint, may avoid federal question jurisdiction by raising only state-law concerns in the vast majority of situations. *Holmes Group, Inc. V. Vornado Air Circulation Systems, Inc.* 535 U.S. 826, 831 (2002); *Caterpillar*, 482 U.S. at 398-399; *Ahearn v. Charter Township of Bloomfield,* 100 F.3d 451, 456 (6th Cir. 1996). In certain instances, however, Congress has enacted comprehensive legislation that preempts all state law within its scope. *Aetna Health Inc. v. Davila*, 542 U.S. 200, 217 (2004). ERISA's enforcement provision, 29 U.S.C. § 1132(a)(1)(B),[1] is such legislation. However, traditional preemption doctrines and the well-pleaded complaint rule still apply to other areas governed by ERISA that do not fall within the scope of the civil enforcement provision. *See*

---

[1] 29 U.S.C. § 1132(a)(1)(B) is often called ERISA § 502(a)(1)(B). This Court will reference the U.S.C. except in quotations.

*Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 66-67 (1987) (decision rested on the direct applicability of the civil enforcement provision); *Harvey v. Life Ins. Co. of North America*, 404 F.Supp.2d 969, 973 (E.D. Ky. 2005). The Supreme Court provided the clearest standard in *Davila*, saying that "if an individual, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B), *and* where there is no other independent legal duty that is implicated by a defendant's actions, then the individual's cause of action is completely pre-empted by ERISA § 502(a)(1)(B)." *Id* at 210 (emphasis added).

The relevant part of Section 1132(a) of ERISA states:

A civil action may be brought -
(1) by a participant or beneficiary -
    (A) for the relief provided for in subsection (c) of this section, or
    (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan; . . . .

29 U.S.C. § 1132(a)(1). Of note is that this section mentions only participants and beneficiaries directly.

The Plaintiff's claims in this case could not have been brought at some time under 29 U.S.C. § 1132(a)(1)(B). The Plaintiff's claim could be described as seeking money damages against the Estate *because she was not made a participant or beneficiary*, rather than an action *by a participant or beneficiary* to recover benefits due or enforce or clarify rights *under the terms of the plan*. For this reason, the Court concludes that the first part of the *Davila* standard is not satisfied. The Court finds that the second aspect of the standard, that of an independent legal duty implicated by a defendant's actions (here, the deceased's actions), is satisfied. The *Davila* decision, which found complete preemption, emphasized that the respondents' claims were brought exclusively to remedy

a denial of ERISA benefits under ERISA-regulated plans (against the administrators of those plans). *Davila*, 542 U.S. at 211).

Here, the alleged breach of a pre-nuptial or post-nuptial agreement is a much broader legal duty, and is independent of 29 U.S.C. § 1132(a)(1)(B). Even when the designation of a plan beneficiary or lack thereof by the participant is central to the breach, the breach has the potential consequence of invalidating those agreements in their entirety. Invalidating the agreements would have far-reaching consequences for the management of the probate process and the ability of the surviving spouse to set aside the will under state law.

This case is distinguishable from defendants' authority of *Boggs v. Boggs*, 520 U.S. 833 (1997). The plaintiff in *Boggs* was seeking declaratory judgment that a state law relating to the distribution of plan funds – altering the beneficiary to whom the plan administrator would distribute funds via community property law – was preempted. Here, the plan funds will be distributed by the plan administrator, TIAA-CREF, to the Glenn Defendants regardless of the outcome of Plaintiff's case. In addition, the Court in *Boggs* gave a ruling which comports with notions of traditional preemption, i.e., that the preempted state law conflicted with ERISA, rather than determining that the action was one which would be so necessarily federal in character as to be exempted from the well-pleaded complaint rule. *Boggs* does not reach the removal jurisdiction question at all, as the petition for declaratory judgment in *Boggs* was filed in federal court. *See Id.*

This Court concludes, therefore, that the Plaintiff's claims do not implicate *complete* ERISA preemption, and as such, are not grounds for removal. The Court does not reach the issue of whether "traditional" federal preemption exists as a *defense* to this claim, as it would not affect removability. *Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 560 (6th Cir. 2007), quoting *Beneficial Nat'l*

*Bank v. Anderson*, 539 U.S. 1, 6 (2003) ("To determine whether the claim arises under federal law, we examine the 'well pleaded' allegations of the complaint and ignore potential defenses.").

### B. Diversity Jurisdiction

Removal is authorized under 28 U.S.C. § 1441(a) for civil actions "of which the district courts of the United States have original jurisdiction." That authorization is limited, however, by § 1441(b), which, in addition, requires in diversity actions that "none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b); *McCall v. Scott,* 239 F.3d 808, 813 (6th Cir. 2001).

The Glenn Defendants contend that, at the time of removal, the presence of an *unserved* resident defendant does not defeat removal jurisdiction. This is true when only § 1441(b) is considered. The parties argue at great length about the manner in which Mr. Cone waived service and whether that complied with the Federal Rules of Civil Procedure. That argument is irrelevant to the underlying question of diversity jurisdiction.

The Glenn Defendants fail to read 1441(b) in light of 1441(a) – that is, a removable action must be one which could initially be brought in federal court, one over which the federal court has original jurisdiction. Before ever reaching the § 1441(b) question of whether a resident defendant was or was not "properly joined and served," the removing defendant must show that the case meets the threshold requirement of complete diversity under § 1441(a).

In *Pullman Co. v. Jenkins*, 305 U.S. 534 (1938), the court explained the distinction as follows:

> Where there is a non-separable controversy with respect to several non-resident defendants, one of them may remove the cause, although the other defendants have not been served with process and have not appeared. In such a case there is diversity of citizenship.... But the rule is otherwise where a non-separable controversy

7

involves a resident defendant. In that case the fact that the resident defendant has not been served with process does not justify removal by the non-resident defendant.

*Id.* at 540, internal citations omitted. The burden on the removing party was clearly stated: "It was incumbent upon the Pullman Company to show that it had a separable controversy which was wholly between citizens of different States." *Id.* Because the plaintiff was a resident and a named defendant was a resident, the court held that it was error to deny the motion to remand.

The Eighth Circuit rejected an argument that the subsequent enactment of § 1441(b) changed the holding in *Pullman*.

> Section 1441(b) does not qualify the requirement of complete diversity; rather, it further limits jurisdiction based on diversity of citizenship by requiring that no joined and served defendants be a citizen of the state in which the action was initially brought. In light of this purpose, we decline to read section 1441(b) as expanding removal jurisdiction, but rather conclude that section 1441(b) did not change the removal requirement set forth in *Pullman* that a court in determining the propriety of removal based on diversity of citizenship, must consider all named defendants, regardless of service.

*Pecherski v. General Motors Corp.* 636 F.2d 1156, 1160-61 (8th Cir. 1981), internal citations omitted. The court further said "the prevailing view is that the mere failure to serve a defendant who would defeat diversity jurisdiction does not permit a court to ignore that defendant in determining the propriety of removal." *Id.* at 1160. *See also Clarence E. Morris, Inc. v. Vitek*, 412 F.2d 1174, 1176 (9th Cir. 1969) ("Whenever federal jurisdiction in a removal case depends upon complete diversity, the existence of diversity is determined from the fact of citizenship of the parties named and not from the fact of service."); *Republic Western Ins. Co. v. International Ins. Co.*, 765 F. Supp. 628, 629 (N. D. Cal. 1991) ("*Pullman* stands for the proposition that the presence of a nondiverse, unserved defendant will destroy removability unless that party is dismissed from the action."); *Wensil v. E.I. DuPont de Nemours and Co.*, 792 F. Supp. 447 (D.S.C. 1992) ("Courts have routinely

held that Section 1441(b) does not permit a non-resident defendant to remove an action to federal court before the resident defendant is served, if joinder of the resident defendant defeats diversity jurisdiction.") .

Where the plaintiff is a non-resident and there is complete diversity between the parties, § 1441(b) becomes applicable. "Where there is complete diversity of citizenship, as LSERS concedes there was, the inclusion of an *unserved* resident defendant in the action does not defeat removal under 28 U.S.C. § 1441(b)." *McCall v. Scott,*, 239 F.3d 808, 813, n. 2 (6th Cir. 2001).

Diversity jurisdiction is determined, generally, at the time of filing of the complaint. *Grupo Dataflux v. Atlas Global Group, L.P.,* 541 U.S. 567, 569-571 (2004). Defendant Cone is a named (and crucial) party to the claim, as executor of the estate against which money damages are being sought. He is both individually, and in his capacity as executor, a resident of Kentucky. When diversity is absent on the face of the complaint and no dispensable non-diverse party will be dismissed, § 1441(a) prohibits removal, as the action is not one which could originally be brought in this Court on the basis of diversity. *See Grupo* 541 U.S. at 574; *Wensil* 792 F.Supp. at 448; *Republic Western*, 765 F.Supp. at 629. Additionally, 28 U.S.C. § 1447(c) requires remand when a Court lacks subject-matter jurisdiction (e.g., diversity jurisdiction or federal-question jurisdiction) at *any time* before final judgment.

### C. Probate Exception

It is not necessary for this Court to address the probate exception to the exercise of jurisdiction as there is neither a federal question issue sufficient for removal nor subject-matter jurisdiction on the basis of diversity of citizenship.

IV.	CONCLUSION

Defendants have failed to meet their burden of demonstrating subject matter jurisdiction in this Court. Accordingly, the matter will be remanded to the Woodford Circuit Court.

**IT IS ORDERED** that:

A.	The Defendant's Motion for Leave to File a Sur-Reply [DE 14]is **GRANTED**, and the Clerk is **DIRECTED** to file the Sur-Reply tendered with the motion; and

B.	Plaintiff's Motion for Remand [DE 9] is **GRANTED**.

This July 22, 2010.



Signed By:
*Karl S. Forester* KSF
United States Senior Judge